IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | **SEALED** |
| v. | § § | Case No. 4:23CR10 Judge Jordan/Judge Nowak |



KCHASNI BELION (15)

**FIRST SUPERSEDING INDICTMENT**

THE UNITED STATES GRAND JURY CHARGES:

**General Allegations**

At all times material to the facts set forth in this Indictment:

### *The Small Business Administration*

1.  The United States Small Business Administration (SBA) was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2.  As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans have government-backed guarantees.

### *The Paycheck Protection Program*

3.  The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP).

4.  To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) was required to state, among other things,

its: (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business is eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide certain documentation validating their business operations.

5. A PPP loan application was processed by a participating lender. If a PPP loan application were approved, the participating lender funded the PPP loan using its own monies, which were guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

6. PPP loan proceeds were required to be used on certain permissible expenses, including payroll costs, rent, and utilities. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

## COUNT 1

<u>Violation</u>: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

7. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

8. Beginning in or around a date unknown, but as early as February 2021, and continuing through the date of this Indictment, the exact dates being unknown to the

Grand Jury, in the Eastern District of Texas and elsewhere, the defendants, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **Kchasni Belion,** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ along with others, both known and unknown to the Grand Jury, did knowingly and willfully conspire and agree to commit wire fraud, in violation of 18 U.S.C. § 1343, that is, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud lending institutions and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, namely by filing false and fraudulent applications for PPP funds.

### Overview of the Conspiracy

9. The defendants, led by ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ executed a scheme to defraud lenders and the SBA. They recruited co-conspirators to submit applications to obtain PPP funding. Once enlisted, they assisted their co-conspirators with the application paperwork, which often included fabricating, or providing fabricated, supporting documentation and submitting the application through the online portals. On the applications, the defendants misrepresented material information such as the true nature of

First Superseding Indictment
Page 4 of 11

their business, the number of employees, and the amount of payroll.  Based on these material misrepresentations, the SBA and other financial institutions approved and issued loans to the defendants.  Once in receipt of the fraudulently obtained funds, the defendants did not use the money as intended, such as to pay employee salaries, cover fixed debt or utility payments, or continue health care benefits for employees.  Instead, the defendants typically paid the leaders of the scheme a kickback, transferred money to their personal accounts, and spent the funds on various personal purchases.  The defendants collectively obtained at least 50 fraudulent loans worth more than $1,000,000.

## Purpose of the Conspiracy

10. It was the general purpose of the conspiracy for the defendants to unlawfully and unjustly enrich themselves by obtaining PPP loan proceeds through materially false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Conspiracy

11. The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among others, the following:

   a. The defendants registered and used sham, non-operational businesses and sole proprietorships, or in other instances existing businesses, under which they could submit PPP applications.

   b. The defendants opened bank accounts under their name and their businesses to receive, deposit, and transfer PPP funds.

   c. The defendants submitted materially false PPP applications, lying about, among other things, the number of employees and monthly payroll expenses.

d. The defendants submitted falsified and fabricated supporting documentation with their loan applications.

e. The defendants submitted the applications and accessed their PPP loan accounts using the internet, frequently from internet protocol addresses ("IP address) that resolved back to residences in the Eastern District of Texas.

f. The defendants used the PPP funds for unauthorized purposes, including cash withdrawals, kickbacks, and other personal expenses.

g. The defendants often paid a portion of the PPP funds to co-conspirators ▮▮▮ as kickbacks for their assistance in obtaining the loans.

h. The defendants caused transmissions that affected interstate commerce by sending wire transfers and by accessing and submitting the PPP applications online.

## Acts in Furtherance of the Conspiracy

12. The chart below summarizes some of the loans obtained by the defendants during their scheme, which are acts in furtherance of the conspiracy, and were committed in the Eastern District of Texas, and elsewhere:

| Date of Loan (on or about) | Business Name | Application Signer(s) and Funds Recipient(s) | Amount Funded (Approximate) |
|---|---|---|---|
| 2/17/2021 | ▮▮▮ | ▮▮▮ | $20,755 |
| 4/9/2021 | ▮▮▮ | ▮▮▮ | $20,832 |
| 5/22/2021 | ▮▮▮ | ▮▮▮ | $20,832 |
| 5/31/2021 | Prime Hospitality | ▮▮▮ | $20,832 |
| 5/21/2021 | ▮▮▮ | ▮▮▮ | $20,832 |

| Date of Loan (on or about) | Business Name | Application Signer(s) and Funds Recipient(s) | Amount Funded (Approximate) |
|---|---|---|---|
| 6/14/2021 | Tex Lagistics | | $20,832 |
| 3/23/2021 | Sole Proprietor | | $20,832 |
| 4/8/2021 | Unknown | | $20,832 |
| 4/22/2021 | Prissy's Kitchen | | $20,832 |
| 3/4/2021 | Sole Proprietor | | $20,567 |
| 5/22/2021 | | | $20,832 |
| 4/8/2021 | Nacho Yo Taco | | $20,832 |
| 4/8/2021 | Not Your Taco | | $20,832 |
| 3/23/2021 | Sole Proprietor | | $20,832 |
| 5/28/2021 | Manjl Trucking | | $20,832 |
| 4/9/2021 | Sole Proprietor | | $20,832 |
| 4/13/2021 | Sole Proprietor | | $20,833 |
| 5/29/2021 | | | $20,832 |
| 6/4/2021 | Sole Proprietor | | $14,006 |
| 6/4/2021 | | | $20,832 |
| 3/9/2021 | Sole Proprietor | Kchasni Belion | $20,567 |
| 4/6/2021 | Sole Proprietor | Kchasni Belion | $20,832 |
| 5/20/2021 | | | $20,832 |
| 3/10/2021 | Sole Proprietor | | $20,657 |
| 4/29/2021 | Sole Proprietor | | $20,832 |
| 5/13/2021 | | | $20,832 |

13. In sum, the defendants obtained at least 50 loans, fraudulently drawing on funds that were earmarked for emergency pandemic relief.

All in violation of 18 U.S.C. § 1349.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

1. The allegations contained in Count One are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendants have an interest.

2. Upon conviction of any violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

3. The property that is subject to forfeiture includes, but is not limited to, the following:

   a. All funds subject to forfeiture in bank accounts receiving or transferring the fraudulently obtained proceeds; and

   b. A money judgment, and all interest and proceeds traceable thereto, representing the proceeds of the offenses, for which the defendants are jointly and severally personally liable.

4. Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of the defendants.

  5.  By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c).

  All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

                  A TRUE BILL

                  _____
                  GRAND JURY FOREPERSON

BRIT FEATHERSTON
UNITED STATES ATTORNEY

_____     _____
SEAN J. TAYLOR             Date
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| v. | § | Case No. 4:23CR10 |
| | § | Judge Jordan/Judge Nowak |



KCHASNI BELION (15)

### NOTICE OF PENALTY

### Count One

Violation:   18 U.S.C. § 1349
             (Conspiracy to Commit Wire Fraud)

Penalty:     A fine of $250,000, or twice the pecuniary gain to the defendant or loss of the victim(s), whichever is greater; imprisonment for not more than 20 years; and a term of supervised release of not more than 3 years.

<u>Special Assessment:</u>        $100